1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

| EXCEL PLAS, INC., | CASE NO. 07-CV-578 – IEG (JMA) |
|---|---|
| Plaintiff, | **ORDER: 1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; and 2) DENYING DEFENDANT'S MOTION TO DISMISS FOR FORUM NON-CONVENIENS** |
| vs. | |
| SIGMAX CO., LTD., | |
| Defendant. | **[Doc. No. 8]** |

12
13
14
15
16
17

Presently before the court are motions to dismiss for lack of personal jurisdiction and for forum

18

non-conveniens filed by Sigmax Co., Ltd. ("defendant"). (Doc. No. 8.)  For the following reasons the

19

court denies defendant's motions.

20

## BACKGROUND

21

**Factual Background**

22

This case arises out of an alleged distribution agreement and co-development agreement

23

between Excel Plas, Inc. ("plaintiff") and defendant.  Defendant is a Japanese-incorporated company

24

that manufactures Robot-Eye, which is a visual monitoring system that ensures large plastic injection

25

molding machines are operating safely. (Complaint ("Compl.") ¶2; Fumio Taki Declaration In Support

26

of Opposition ("Taki Decla. ISO Opp.") ¶ 3.)  Robot-Eye consists of a controller, camera, cable, and

27

a display.  (Compl. ¶4.)  Plaintiff is a California corporation that acts as the exclusive distributor for

28

Robot-Eye in North America.  (Id. ¶7.)

07cv578

According to the complaint, in January 1998, the parties entered into a written sales agreement where plaintiff would buy Robot-Eye Model SX-310 units from defendant and resell them in North America. (Id. ¶9.)  In 2001, defendant developed an upgrade, Robot-Eye Model SX-510.  According to plaintiff, the parties continued their arrangement under the 1998 sales agreement, although by its terms, the agreement was only valid for one year and covered the SX-310.  (Id. ¶¶11-13.)  Plaintiff claims that since 1998, plaintiff has bought more than 80 units for resale in North America.  (Id. ¶14.)

Plaintiff alleges some of the Robot-Eye SX-510 units that defendant supplied were defective and end-users began complaining of malfunctions.[1]  (Id. ¶18.)  After informing defendant of the issues, plaintiff began investigating the underlying causes and troubleshooting at the customers' sites.  (Id. ¶¶19, 21, 28.)  Plaintiff further alleges the sales agreement and user's manual contained defendant's express quality warranty for a period of one year from the unit's shipment.  (Id. ¶16.)  Because plaintiff was defendant's sole North American distributor, all end-user communications had to go through plaintiff.  (Id. ¶21.)  Customers returned malfunctioning units to plaintiff, plaintiff then shipped them back to defendant for repairs, and then defendant returned the repaired unit or shipped a new unit to plaintiff for delivery to the end user.  (Id. ¶22.)  According to plaintiff, defendant always bore the costs of shipping and completing these repairs.

In June 2003, the parties began negotiations to co-develop an improved Robot-Eye model ("New System").  Plaintiff claims defendant requested active participation by plaintiff in the form of technical advice and U.S. marketing information.  (Id. ¶24.)  In August 2005, defendant purportedly confirmed, in writing, an agreement with plaintiff to: 1) develop the New System by June 2006; 2) exhibit the New System at a 2006 trade show in Chicago; and 3) have plaintiff participate in the development.  Plaintiff claims it paid a non-refundable fee to reserve a booth at the trade show, as instructed by defendant, and it incurred significant costs in the New System's development.

In November 2005, defendant informed plaintiff it was no longer interested in co-developing the New System or exhibiting the New System at the Chicago trade show.  (Id. ¶31.)  During this time, plaintiff continued to receive complaints about defects in the SX-510.  As two examples, in February

---

[1] Plaintiff claims approximately 60% of the SX-510 units were experiencing problems. (Compl. ¶19.)  Plaintiff's customers were allegedly having problems with SX-510's controller fuse, keypad connector, the monitor, and the controller's integrated circuit.  (Id.)

2006, Nissei Mexico and Tyco Electronics Corp. both returned broken units.  According to plaintiff, defendant violated the sales agreement by directly contacting both Nissei and Tyco.  (Id. ¶32.) Specifically, in March 30, 2006, defendant issued an invoice to Tyco that noted the existence of a general design defect in the integrated circuit ("IC") of the SX-510 controller.  (Id. ¶33.)  Plaintiff claims defendant knew of this systematic IC defect, which affected all SX-510's, but concealed this information from plaintiff.  Moreover, when plaintiff asked defendant late in 2006 about the defect, defendant denied its existence.  (Id. ¶ 34.)  On July 8, 2006, plaintiff received an invoice from defendant to repair costs, which included costs for repairing Nissei's and Tyco's units.  Plaintiff was surprised because since the inception of their arrangement, defendant always bore these types of costs. (Id. ¶35.)  Plaintiff requested, in writing, an explanation for this cost-shifting, but defendant refused. Also on July 8, 2006, defendant sent plaintiff an email stating the sales agreement would be terminated, effective July 10, 2007.  (Id. ¶36.)

**Procedural Background**

On December 22, 2006, plaintiff filed a nine-count complaint against defendant in California Superior Court.  Plaintiff alleged causes of action for: **1)** breach of written contract; **2)** breach of implied contract; **3)** breach of implied covenant of good faith and fair dealing; **4)** unjust enrichment; **5)** breach of express warranties; **6)** breach of implied warranties; **7)** fraudulent concealment; **8)** intentional interference with contractual relations; and **9)** declaratory relief, seeking a judicial declaration that defendant must indemnify any expenses incurred by plaintiff in repairing Robot-Eye units. (Doc. No. 1.)  On March 29, 2007, defendant removed the case to federal court on the basis of diversity jurisdiction, (Doc. No. 1), and filed an answer on April 2, 2007.  (Doc. No. 3.)

On July 11, 2007, defendant filed the instant motions. Plaintiff filed an opposition on August 31, 2007. (Doc. No. 12.)  Defendant filed its reply and evidentiary objections on September 10, 2007. (Doc. No. 13.)

## DISCUSSION

**I.    Motion to Dismiss For Lack of Personal Jurisdiction**

Legal Standard

Rule 12(b)(2) provides for dismissal of an action where the court lacks personal jurisdiction

over a defendant.  See Fed. R. Civ. P. Rule 12(b)(2).  The plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).  If the motion, as in the present case, is based on affidavits and documentary evidence, the plaintiff need only make a prima facie showing of facts establishing personal jurisdiction.[2]  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  In other words, jurisdiction is proper where the plaintiff demonstrates "facts that, if true, would support, the court's exercise of jurisdiction over the defendant."  Amini Innovation Corp. v. JS Imports, Inc., – F. Supp. 2d –, 2007 WL 1597942, at *2-3 (C.D. Cal. 2007).  Uncontroverted allegations in the complaint are accepted as true and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.  Schwarzenegger, 374 F.3d at 800; see Bancroft & Masters, Inc. v. August Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiffs allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal.").  A prima facie showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts.[3]  See 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.6 (3rd ed. 2002).

The Ninth Circuit has established a two-step test for determining the propriety of asserting personal jurisdiction.  See Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985).  First, the relevant state's long-arm statute must permit jurisdiction.  Second, the exercise of jurisdiction must be consistent with federal constitutional principles of due process.  Greenspun v. Del E. Webb Corporation, 634 F.2d 1204, 1207 (9th Cir. 1980) (citations omitted).  As to the first inquiry, California's long arm statute extends jurisdiction to the maximum extent permitted by due process.  Cal. Civ. P. Code § 410.10 (West 2006) ("[A] court of this state may exercise

---

[2] In deciding a Rule 12(b)(2) motion, the court may hold an evidentiary hearing as an alternative to deciding the matter based on affidavits, pleadings, and documentary evidence.  Data Disc., Inc. v. Systems Technology Association, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  At such a preliminary hearing, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence.  Id. at 1285.  The court retains broad discretion in determining which procedure to utilize.  See, e.g., Travelers Cas. & Sur. Co. of America v. Telstar Constr. Co., 252 F. Supp. 2d 917 (D. Ariz. 2003).

[3] If the plaintiff survives the motion to dismiss under a prima facie burden of proof, however, the plaintiff still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial.  Data Disc, Inc., 557 F.2d at 1285 n. 2 (citation omitted).

1  jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

2   Accordingly, California authorizes jurisdiction whenever the second inquiry of the Ninth Circuit's

3  test – the demands of due process – is satisfied.  FDIC v. British American Ins. Co. Ltd., 828 F.2d

4  1439, 1441 (9th Cir. 1987).

5       The Fourteenth Amendment's Due Process Clause permits personal jurisdiction over any

6  defendant that has sufficient "minimum contacts" with the forum such that the exercise of jurisdiction

7  "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v.

8  Washington, 326 U.S. 310, 316 (1945). There are two recognized bases for exercising personal

9  jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises when the

10  defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to

11  justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises

12  when a plaintiff can establish that the present claims arose directly from defendant's California-related

13  activities. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

14  A.    General Jurisdiction

15       General jurisdiction exists where a non-resident defendant has "substantial" or "continuous

16  and systematic" contacts in the state that **"approximate physical presence."**  Bancroft & Masters,

17  Inc., 223 F.3d at 1086.   Thus, there must be a high level of contact with the forum state.

18  Schwarzenegger, 374 F.3d at 801 ("This is an exacting standard, as it should be, because a finding of

19  general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of

20  its activities anywhere in the world."); Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301

21  (9th Cir. 1986) ("[General personal jurisdiction] is a fairly high standard in practice.").   A company

22  cannot merely be doing business "with" individuals in the state but must be doing business "in" the

23  state.  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co., 284 F.3d 114 (9th Cir. 2002).

24       Plaintiff argues defendant has the necessary continuous contacts with California because

25  defendant sold Robot-Eye units through a consignment system, which allowed defendant to retain

26  ownership of Robot-Eye units until final sale to end-users.  Plaintiff also claims defendant knew

27  Robot-Eye was being marketed to California customers because defendant never instructed plaintiff,

28  its exclusive North American distributor, not to sell in California.  Plaintiff notes defendant's

representative visited San Diego in 1996 to install two Robot-Eye units and in April 2000, a California-based company contacted defendant to see if it could become a co-distributor with plaintiff, although defendant ultimately declined the offer.  According to plaintiff, it created a English Robot-Eye website in January 2001 upon defendant's request.

Plaintiff's argument is unpersuasive.  An alleged business trip to California by defendant's employee to install a Robot Eye unit does not raise defendant's interaction with California to a systematic level.  See, e.g., U.S. Vestor, LLC v. Biodata Information Technology AG, 290 F. Supp. 2d 1057, 1065 (N.D. Cal. 2003) (stating that a business trip by two of German defendant's officers to California was insufficient to support general jurisdiction ).  Furthermore, a website that may reach California residents does not support jurisdiction where, as here, it merely provides information for interested parties.  See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997) (stating that passive websites that do not allow the consummation of business does not qualify as meaningful contacts).  Similarly, one email from a California resident that originated through defendant's Japanese website does not render defendant's contacts with California "pervasive" or "systematic." Thiring v. Borden, 2007 WL 1875656, at*4 (D. Or. June 27, 2007) (rejecting the plaintiff's argument that a communication with forum resident via a passive website could support general jurisdiction). Furthermore, plaintiff's reliance on an unsuccessful negotiation between a California-based company and defendant is misplaced.  It is unclear how fruitless preliminary discussions initiated by a third-party California resident that ultimately did not result in a contract leads to a conclusion that defendant's contacts with the state are systematic.  According to plaintiff, the fact defendant knew Robot-Eye units were being sold to California residents creates general jurisdiction.  However, the general jurisdiction analysis focuses on defendant's affirmative interaction with California and not whether defendant had knowledge plaintiff was selling and marketing Robot-Eye to Californian end-users.  See Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 921 (D. Or. 1999); cf. Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 112 (1987) (holding that personal jurisdiction can not rest merely on the knowledge of defendant that its products were entering the state).

07cv578

1    There is a dispute between the parties as to where plaintiff took title to Robot-Eye units.[4]

2    Defendant relies on shipping documents that indicate Robot-Eye units were sold F.O.B. Japan and title

3    transferred to plaintiff before the units reached the United States.[5]  (Watanabe Declaration In Support

4    of Motion ("Watanabe Decla. ISO Motion") ¶7.)  The declaration of Mr. Taki states Robot-Eye units

5    were sold via consignment and it was solely for defendant's convenience that defendant's shipping

6    documents stated F.O.B. Japan.[6]  (Taki Decla. ISO Opp. ¶¶6-7.)   Plaintiff also notes defendant

7    requested a inventory list of the California warehouse at the end of each month.[7]  (Ako Williams

8    Declaration ISO Opposition ("Williams Decla. ISO Opp."), Exhibit 4.)  In deciding this motion, the

9    court must resolve all conflicts in the evidence in plaintiff's favor and accept plaintiff's version of the

10   facts as true.   Peterson v. Highland Music, Inc., 140 F.3d 1313, 1320 (9th Cir. 1998).   Accordingly,

11   at this stage of the proceedings, the court accepts plaintiff's assertion that units were sold via

12   consignment.

13       Even accepting plaintiff's version of the events, the evidence demonstrates that defendant's

14   contacts with California are not sufficiently continuous and substantial to support a reasonable

---

18       [4] Defendant submitted objections to Mr. Taki's declaration but did not file a formal motion

19   to strike.  In deciding this motion, the court has only considered admissible evidence, such as factual
     statements based on personal knowledge, and not vague or unsupported generalizations.

20       [5] F.O.B., an acronym for Free on Board, is "[a] mercantile-contract term allocating the rights

21   and duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss,
     whereby the seller must clear the goods for export, and the buyer must arrange for transportation. The

22   seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass the
     transporter's rail. The buyer is responsible for all costs of carriage."  Black's Law Dictionary (8th ed.

23   2004).

24       [6] Pursuant to this consignment arrangement, defendant shipped units and peripherals to

25   plaintiff's California warehouse, but retained ownership until they were sold to the end users. (Taki
     Decla. ISO Opp. ¶ 6.)  Plaintiff would create a spec sheet based on projected demand for Robot-Eye

26   units and peripherals, and then submit the spec sheet to defendant.   When plaintiff received a
     purchase order from a customer, it would ship the request product and bill the customer.  Plaintiff then

27   sent a purchase order to defendant in English and for U.S. dollars. (Id.)

28       [7] For example, in a fax dated November 27, 2000, defendant's representative stated: "[W]e are
     confirming our external inventory. Attached is the list of the inventory which we think to be at your
     location. Please confirm."  (Williams Decla. ISO Opp., Exhibit 4.)

conclusion that defendant had a physical presence in California.[8]  See Schwarzenegger, 374 F.3d at

801 (stating that a finding of general jurisdiction requires the plaintiff to meet an "exacting

standard."). The existence of a consignment arrangement is insufficient to create general jurisdiction,

particularly where the units are ultimately sold throughout the country.  See, Seltzer v. I.C. Optics,

Ltd., 339 F. Supp. 2d 601, 612 (D.N.J. 2004) (holding defendant's contacts with forum state was not

sufficiently systematic despite a consignment agreement between defendant and distributor  for

defendant's inventory); Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1102 (C.D.

Cal. 2007) (noting that defendant had not "sat down and made itself at home" even though its products

were shipped to California but ultimately ended up in other U.S. destinations).  Only 81 unites were

sold in the United States over the course of the parties' 12 years relationship and an even smaller

number were sold via consignment (i.e., units sold after 2001).  Furthermore, only 16 units were ever

sold to California end-users.  See Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986)

(holding occasional sales to California residents are insufficient to create general jurisdiction).  The

translated declaration of Ms. Kazuko Watanabe, defendant's president, states defendant is a four-

person corporation that was incorporated in Japan and is based in Yokohama City, Japan.  ("Watanabe

Decla. ISO Motion ¶2.)  Defendant primarily sells Robot-Eye in Japan and Asia.  (Id. ¶¶3, 8.)

Defendant has no offices, employees, agents for service of process, or financial assets in California

or anywhere in the U.S.  In fact, defendant does not have a mailing address, telephone line, or post

office box within the state.  Payment for Robot-Eye units were made by wire transfer to defendant's

Japanese bank.  Defendant has not registered as a corporate entity in California and does not pay taxes

in the state.  (Id. ¶4.)  Moreover, plaintiff does not claim negotiations for the sales agreement or co-

development agreement occurred in California.  In fact, the majority of the communications between

parties were conducted via email or tele-conferencing in Japanese, or via meetings in Japan.  (Id. ¶ 6.)

In sum, plaintiff has not met its burden of demonstrating the exercise of  general jurisdiction is

---

[8] Helicopteros Nacionales de Columbia, 466 U.S. at 414, illustrates just how substantial, continuous, or systematic a defendant's contacts must be for a court to assert general jurisdiction.  In that case, the defendant bought 80% of its fleet of helicopters, as well as its spare parts and accessories from a Texas company over a four-year period; these transactions totaled more than $4 million.  Id. at 411.  In addition, defendant sent its pilots and management personnel to Texas for training.  Id.  The Court, however, found that these contacts did not establish general jurisdiction over the defendant in Texas.

1    appropriate.

2    B.    Specific Jurisdiction

3        If a non-resident's actions do not create general jurisdiction, a defendant may still be subject
4    to "specific jurisdiction" on claims related to its activities or contacts in the forum. Yahoo! Inc. v. La
5    Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006). In assessing
6    specific jurisdiction, the Ninth Circuit uses a three-prong analysis: 1) defendant must do some act or
7    consummate some transaction in California by which it  purposefully avails itself of or directs its
8    activities toward residents of the state; 2) plaintiff's claims must arise out of or result from defendant's
9    California-related activities; and 3) California's exercise of jurisdiction must be reasonable. Doe v.
10    Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). In short, whether specific jurisdiction exists "turns
11    on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of
12    action." Id. The determination of whether these factors are met is a factual question to be determined
13    in each case. Thomas P. Gonzalez Corp. v. Consejo Nacional De Production De Costa Rica, 614 F.2d
14    1247, 1251 (9th Cir. 1980).

15        1.    Purposeful Availment

16        The first prong encompasses two distinguishable concepts – true "purposeful availment" and
17    "purposeful direction." Schwarzenegger, 374 F.3d at 802. The former typically applies to causes of
18    action "sounding in contract," while the latter to causes of action "sounding in tort." Id. Establishing
19    either element satisfies the first prong of the specific jurisdiction test. Id.

20        "When an intentional tort claim is asserted, purposeful availment . . . can be met by the
21    purposeful direction of a foreign act **having effect** in the forum state." CE Distrib., LLC v. New
22    Sensor Corp., 380 F.3d 1107, 1111 (9th Cir. 2004). This "effects test" is satisfied if defendant "(1)
23    committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm,
24    the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum
25    state." Bancroft & Masters, Inc., 223 F.3d at 1087. Under this analysis, it is not necessary for the
26    defendant to have direct contact with the forum state. Metropolitan Life Ins. Co. v. Neaves, 912 F.2d
27    1062, 1065 (9th Cir. 1990).

28        Taking the allegations in the complaint as true, plaintiff's tort claims – intentional interference

1   with a contractual relationship and fraudulent concealment – meet the Ninth Circuit's "effects test."

2   In its fraudulent concealment claim, plaintiff alleges defendant concealed material information about

3   Robot Eye's functioning to plaintiff in California.  The Ninth Circuit, in <u>Dole Food Co. v. Watts</u>, 303

4   F.3d 1104 (9th Cir. 2002), found "purposeful direction" where the defendant sent allegedly false

5   information to plaintiff's headquarters, knowing that plaintiff was located in California.  The instant

6   case is analogous.  Here, plaintiff claims defendant made assurances that any design flaws had been

7   addressed, (Compl. ¶63), even though it knew there were lingering system defects, which plaintiff

8   eventually discovered in March of 2006.  Because plaintiff is located in California, any economic

9   harm would be suffered in this forum, where plaintiff has its principal place of business.  Accordingly,

10  plaintiff's fraud claim meets the effects test.  <u>See, e.g.</u>, <u>Peacock v. Willis</u>, 2006 WL 6060134, at *6

11  (E.D. Cal. Oct. 27, 2006) ("Communications with a plaintiff in the forum in the form of letters, faxes,

12  and phone calls . . . can constitute express aiming."); <u>Hall v. Nelson Aircraft Sales</u>, Inc., 2006 WL

13  902449, at *3 (E.D. Cal. Apr. 5, 2006); <u>Dinnerman v. Douter Coffee Co., Ltd.</u>, 2007 WL 1701919,

14  at *6 (D. Hawaii June 8, 2007).

15          Similarly, plaintiff's intentional interference claim meets the "purposeful direction" test.

16  Plaintiff alleges defendant intentionally communicated with Nissei and Tyco to harm plaintiff's

17  contractual relationship with these two companies.  Defendant's argument the "purposeful availment"

18  prong is not met because Nissei and Tyco are not California residents is unpersuasive.  According to

19  the Ninth Circuit, purposeful direction for an "intentional interference with contract" claim does not

20  require that defendant interfere with California residents.  <u>See</u> <u>Bancroft & Masters, Inc.</u>, 223 F.3d at

21  1087 (holding that the "express aiming" requirement is met "when the defendant is alleged to have

22  engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the

23  forum state.").  For example, in <u>CE Distrib., LLC</u>, 380 F.3d at 1111-1112, the court found specific

24  jurisdiction where plaintiff claimed defendant entered into a contract **with a company outside the**

25  **U.S.** that impaired plaintiff's distribution rights in the forum state.  The court accepted plaintiff's

26  argument that even though the tortious conduct occurred outside the forum state, the harm was still

27  directed and occurred in the forum state.  Likewise, defendant in the instant case is alleged to have

28  interfered with plaintiff's contractual relationships while knowing plaintiff is located in California and

1    the effect of this misconduct would resonate in this state.  See Harris Rutsky & Co. Ins. Servs., Inc.

2    v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (finding effects test met where

3    defendant's misconduct occurred entirely in another country); Myers v. Bennett Law Offices, 238 F.3d

4    1068 (9th Cir. 2001); Spring Patents, Inc. v. Avon Rubber & Plastics, Inc., 183 F. Supp. 2d 1198, 1206

5    (D. Hawaii 2001).

6         For contract claims, "the 'purposeful availment' requirement is satisfied if the defendant has

7    taken deliberate action within the forum state or if he has created continuing obligations to forum

8    residents."[9] Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citation omitted); Sher v. Johnson,

9    911 F.2d 1357, 1362 (9th Cir. 1990) (finding purposeful availment where  the defendant performs

10   "some type of affirmative conduct which allows or promotes the transaction of business within the

11   forum state"); Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir.1990) (applying

12   purposeful availment test in case where the plaintiff brought action for *inter alia* breach of warranty).

13   In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478  (1985), the Supreme Court noted the mere

14   existence of a contract with an effect in the forum state was not sufficient to warrant jurisdiction,

15   cautioning against random, fortuitous, or attenuated contacts not substantial enough to constitute

16   "minimum contacts.  The Court explicated that courts should use a realistic approach considering the

17   parties, prior negotiations, contemplated future consequences, terms of the contract, and the parties'

18   actual course of dealing.  Id.  In examining the purposeful availment requirement, this court analyzes

19   "whether the defendant's contacts with the forum are attributable to his own actions or are solely the

20   actions of the plaintiff."  Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991).

21        This case presents a close call.  On one hand, defendant presents evidence that the majority

22   of the negotiations leading up to the alleged sales agreement and the co-development agreement

23   occurred electronically or through in person meetings in Japan.  See Peterson v. Kennedy, 771 F.2d

24   1244, 1262 (9th Cir. 1985) (holding that "ordinarily use of the mails, telephone, or other international

25   communications simply do not qualify as purposeful activity invoking the benefits and protection of

26

27        [9] Defendant is correct that plaintiff's reliance on Clune v. Alimak AB, 233 F.3d 538 (8th Cir.
     2000), and Gary Scott Inter., Inc. v. Frank M. Baroudi, 981 F. Supp. 714 (D. Mass. 1997), is
28   misplaced because these non-Ninth Circuit cases involve tort claims, which as described above, utilize
     a different test in determining whether there is sufficient grounds for specific jurisdiction.

the [forum] state") (citation omitted); Watanabe Decla. ISO Motion ¶ 6.  Plaintiff presents no evidence about contract negotiations that occurred in California, where the agreements were executed, or which party initiated the discussions that ultimately led to the two agreements.[10]  Furthermore, with respect to the co-development agreement, it is undisputed that defendant conducted its research and development in Japan and it was only plaintiff who conducted activities in California.  See Roth, 942 F.3d at 621;  McGlinchy, 845 F.2d at 816-17 (rejecting argument that specific jurisdiction can be based on plaintiff's performance of the contract terms in California where defendant did not perform its obligations in California).  The only object of the co-development agreement involving the United States was the exhibition of the New System at a trade show in Illinois.  (Taki Decla. ISO Opp. at ¶ 14.)  As noted above, the existence of a passive website that may be accessed by California residents is typically insufficient to support personal jurisdiction.   See Cybersell, 130 F.3d at 418.

On the other hand, defendant retained ownership of Robot-Eye units in a California warehouse until final resale pursuant to the alleged consignment agreement.[11]  Thus, the sales agreement, which spanned nine years and 81 Robot-Eye units, was consummated in California.  Plaintiff also presents evidence that defendant did not merely know its product could end up in California but that it affirmatively solicited this market, specifically by encouraging a sub-distributor to drum up sales in California.  (Taki Decla. ISO Opp. ¶ 11.)  As noted above, while one business trip by defendant's representative to California is insufficient to support general jurisdiction, it is one factor demonstrating that plaintiff purposefully availed itself of the privilege of conducting activities in California.  Schwarzenegger, 374 F.3d at 802.  Most importantly, the parties engaged in a nine-year exclusive distributorship relationship that created continuing obligations for defendant to a California resident.

---

[10] Defendant notes that plaintiff has failed to present evidence of signed contracts between the parties.  Nevertheless, the court accepts as true plaintiff's factual assertions that a written agreement existed between the parties.  (Taki Decla. ISO Opp. ¶¶ 5, 14.)

[11] Even if the court rejects plaintiff's position that a consignment arrangement existed between the parties, which it cannot do at this stage of the proceedings, defendant is not automatically shielded from specific jurisdiction simply because shipment was F.O.B.  Japan.  See Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 471-72 (5th Cir. 2006) ("we conclude that a F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper"); Rudolph v. Topsider Bldg. Systems, Inc., 2007 WL 2156089, *4 (D. Hawaii July 27, 2007) ("But agreeing to delivery F.O.B. North Carolina does not negate purposeful availment of the laws of Hawaii.").

1   Courts in the Ninth Circuit often find purposeful availment where parties enter into a long-term

2   distributorship agreement, reasoning the out-of-state defendants should reasonably have anticipated

3   being haled into court in the forum state because of the extended business relationship.  See, e.g.,

4   Bulldog West Equipment v. Mapcon, Inc., 2007 WL 973970, at *6 (D. Ariz. Mar. 30, 2007) (finding

5   personal jurisdiction because the parties exclusive distributorship agreement created continuing

6   obligations to one another); Bou-Matic, L.L.C. v. Ollimac Dairy, Inc., 2006 WL 658602, at *6 (E.D.

7   Cal. Mar. 15, 2006) (holding that by entering into a national exclusive distributorship agreement, the

8   defendants "sought and obtained extensive and continuous contacts with the American market" and

9   should expect to be haled into California courts); cf. JoeScan, Inc. v. LMI Technologies, Inc., 2007

10  WL 2572297, at *3 (W.D. Wash. Sept. 5, 2007) (stating that exclusive distributorship agreement that

11  constituted an action directed at the forum state); S & S Screw Mach. Co. v. Cosa Corp., 647 F. Supp.

12  600, 610 (M.D. Tenn. 1986).  On balance, the court finds this case does not involve an isolated

13  business transaction, but involves a continuous relationship between the parties to repeatedly sell

14  products in California and the United States, which gives defendant "minimum contacts" with this

15  state.  Flynt Distributing Co., Inc. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984) ("By entering into

16  a distribution agreement with a California corporation for the distribution of their [products] in

17  California and elsewhere, the [defendants] purposefully availed themselves of that forum."); Lung v.

18  Yachts Intern., Ltd., 980 F.Supp. 1362, 1368 (D. Hawaii 1997) (finding personal jurisdiction where

19  the contract term was four years thereby creating a "continuing relationship" between defendant and

20  plaintiff, a citizen of the forum state).

21          2.      "But For" Causation

22          To demonstrate that plaintiff's cause of action arises out of or results from defendant's forum-

23  related contacts, plaintiff must show that "but for" defendant's contacts with the forum state, its claims

24  would not have arisen.  Ballard, 65 F.3d at 1500; see also Glencore Grain Rotterdam B.V., 284 F.3d

25  at 1123.  With respect to plaintiff's tort claims, this standard is met.  Plaintiff alleges absent

26  defendant's misleading communications and improper contacts with plaintiff's customers, plaintiff

27  would not have incurred costs and economic injury.  Put another way, but for defendant's actions,

28  plaintiff's tort claims would not have arisen and, thus, the causation element is satisfied.  With respect

to plaintiff's contract-based claims, defendant's forum-related contacts involve its exclusive distributorship relationship with plaintiff and the shipment of Robot-Eye units to California pursuant to that relationship. Without the sales agreement and the delivery of units to California, plaintiff could not pursue its claims for contract based claims.

3.    Reasonableness of Jurisdiction

If the plaintiff succeeds in satisfying both of the first two prongs of the specific jurisdiction analysis, the burden shifts to the defendant to "present **a compelling case**" that the exercise of jurisdiction would not be reasonable.  Burger King Corp., 471 U.S. at 476-78 (emphasis added). Courts in the Ninth Circuit apply this requirement by weighing seven factors: 1) the extent of the defendant['s] purposeful interjection into the forum state's affairs; 2) the burden on the defendant of defending in the forum; 3) the extent of conflict with the sovereignty of the defendant['s] state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient [forum for] judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; 7) the existence of an alternative forum.   Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1485 (9th Cir. 1993).

As to the first factor, the court must weigh the extent of defendants' purposeful interjection into the affairs of the forum state, even if the purposeful availment prong is satisfied.  Id. at 1488.  In the instant case, even accepting plaintiff's allegations regarding defendant's activities in California as true, there has not been significant interjection by defendant.  The parties agree that only 81 units – 2% of defendant's total sales – over the course of nine years ever entered the United States and only 18 units were sold to California end-users.  Moreover, the visit to California by defendant's representative appears unrelated to the specific allegations of misconduct in the present lawsuit.  While it is undisputed Robot-Eye units were sold throughout the U.S., plaintiff fails to present specific evidence that defendant encouraged or required plaintiff to market specifically in California.  Moreover, as noted above, defendant does not have any offices, financial assets, or agents in California.  Due to its alleged tortious conduct and sale of Robot-Eye units, defendant has interjected itself into California's affairs but there has not been pervasive interjection.  Accordingly, this factor slightly favors dismissal, contrary to plaintiff's argument.

With respect to the second factor, defendant argues it will experience a severe burden if required to litigate in this forum because its employees are not fluent in English, defendant's documents are in Japan and in Japanese, and a necessary witness, Takaoka, may not be subject to compulsory service.  Recently, courts have noted there will inevitably be a burden on foreign defendants to participate in United States litigation, but reasoned the burden is reduced by modern advances in communication and travel.  See, e.g., Id. at 1489; Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988); Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1069 (D. Hawaii 2000) (finding that while defendant and its witnesses may experience difficulty if the case remains in Hawaii, the burden is significantly reduced by modern air travel and communications).  In addition, while there will be costs associated with translating documents and interpreters for witnesses, there will be a similar burden for plaintiff if this case is moved to Japan.  See Sinatra, 854 F.2d at 1199 (stating "the burden on defendant must be examined in light of the corresponding burden on the plaintiff").  Although the defendant will admittedly experience some burden in litigating this case in California, the inconvenience is not so great as to deprive defendant of due process.  Thus, this factor favors dismissal but not to the significant degree suggested by defendant.

The third factor concerns the extent to which the exercise of jurisdiction in California may conflict with the sovereignty of defendant's residence.  See Panavision International, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir.1998).  Defendant fails to make any arguments concerning potential impingement on Japanese sovereignty.  In fact, defendant's evidence indicates the Japanese law and U.S. law applicable to this lawsuit are similar in many respects, which weighs in favor of the exercise of specific jurisdiction.  United Kingdom Mut. S.S. Assurance Ass'n v. Cont'l Maritime of San Francisco, Inc., 1992 WL 486937, at *5 (N.D. Cal. Aug. 31, 1992) (finding that this factor weighed in favor of reasonableness because there was no conflict between Canadian law and U.S. law).  As such, this factor does not favor dismissal.  See Wolf Designs, Inc. v. DHR Co., 322 F. Supp. 2d 1065, 1074-75 (C.D. Cal. 2004) (noting that defendant failed to identify an sovereignty conflict in finding reasonableness of jurisdiction); cf. Sinatra, 854 F.2d at 1200 (stating that if a foreign forum's sovereignty interest were given controlling weight, any suit against foreign nationals in the U.S. would be defeated).

07cv578

1    At oral argument, defendant conceded the fourth factor – California's interest in adjudicating

2 this dispute – weighs in favor of retention.  California has a strong interest in providing its residents,

3 such as plaintiff, with effective protection from and redress for the misconduct of others.  See, e.g.,

4 CFA Northern Cal., Inc. v. CRT Partners LLP, 378 F. Supp. 2d 1177, 1187 (N.D. Cal. 2005) (finding

5 that California has a interest in assuring that "contracts made with its residents are not breached and

6 that its residents are not defrauded").

7    Determining the most efficient forum for judicial resolution involves consideration of where

8 the injury occurred and the forum in which the relevant evidence is located.  Amoco Egypt Oil Co v.

9 Leonis Nav. Co., Inc., 1 F.3d 848, 852 (9th Cir. 1993).  This factor is "no longer weighed heavily

10 given the modern advances in communication and transportation."  Panavision, 141 F.3d at 1323-24.

11  In the instant case, both sides have identified relevant documents and witnesses in Japan and the U.S.

12 in support of their arguments that their preferred location will be a more efficient forum.  This factor

13 is neutral or slightly favors retention because plaintiff experienced the alleged injuries in California.

14    In analyzing the sixth factor – plaintiff's interest in obtaining relief in the current forum –

15 courts recognize this factor axiomatically weighs in favor of retention, but give less weight to

16 plaintiff's inconvenience. Roth, 942 F.2d at 624 (noting that "no doctorate in astrophysics is required

17 to deduce that trying a case where one lives is almost always a plaintiff's preference"); Panavision,

18 141 F.3d at 1316.  Nevertheless, the declaration of Mr. Taki, plaintiff's sole employee, states that if

19 Mr. Taki must litigate this lawsuit in Japan, Excel and his family will endure significant financial

20 hardship. (Taki Decla. ISO Opp. ¶ 18.)  Courts also consider how the chosen forum affects plaintiff's

21 possibility of effective relief.  See Core-Vent, 11 F.3d at 1489.  While litigation in Japan would not

22 deny plaintiff from obtaining meaningful relief, California's laws allow plaintiff to pursue certain

23 causes of action and damages that are unavailable in Japan.  As such, this factor weighs in favor of

24 retention.

25    Plaintiff bears the burden of proving the seventh and final factor, the unavailability of an

26 alternative forum.  See id. at 1490.   Here, Plaintiff has met not this burden.   Defendant's

27 uncontroverted evidence shows plaintiff could raise similar claims in a Japanese forum.  Accordingly,

28 this factor weighs in favor of defendant.

07cv578

1    In sum, defendant bears the burden of presenting a "compelling case" that the maintenance of

2    jurisdiction in this forum would be constitutionally unreasonable.  In fact, defendant must demonstrate

3    that it is "so gravely difficult and inconvenient" to litigate in California that defendant "unfairly is at

4    a severe disadvantage in comparison to [plaintiff]."  Burger King, 471 U.S. at 478.  Only factors one,

5    two, and seven favor defendant in the "fair play and substantial justice" analysis.  The remaining

6    factors favor plaintiff.  Therefore, defendant has failed to meet its burden and the exercise of specific

7    personal jurisdiction is reasonable.  See, e.g., Miracle, 87 F. Supp. 2d at 1060 (holding jurisdiction

8    was reasonable where defendant could only demonstrate that two of the seven factors weighed in favor

9    of dismissal); Wolf Designs, Inc., 322 F. Supp. 2d at 1075 (retaining jurisdiction where defendant

10   failed  to present a "compelling case" that jurisdiction would be unreasonable).

11   **II.      Motion to Dismiss for Forum Non-Conveniens**

12   Legal Standard

13   A party moving to dismiss based on forum non conveniens bears a **heavy** burden of showing:

14   1) that there is an adequate alternative forum; and 2) that the balance of public and private interest

15   factors favor dismissal of suit.  Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142-43 (9th Cir. 2001).

16   Unless the balance of "private interest" and "public interest" factors **strongly** favors trial in the foreign

17   country, a plaintiff's choice of forum will not be disturbed.  See Gates Learjet Corp. v. Jensen, 743

18   F.2d 1325, 1334 (9th Cir. 1984). A court may consider any or all of the "private interest" and "public

19   interest" factors applicable to a case and give appropriate weight to each factor in arriving at a

20   balanced conclusion.  Lueck, 236 F.3d at 1145-46.  The standard to be applied is whether a defendant

21   has made a clear showing of facts which establish that trial in the chosen forum would "establish such

22   oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience."

23   American Dredging Co. v. Miller, 510 U.S. 443, 447-448 (1994).  Dismissal for forum non conveniens

24   is an "exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose

25   the optimal forum for their claim."  Dole Food Co., 303 F.3d at 1118.  Nevertheless, "[a] citizen's

26   forum choice should not be given dispositive weight . . . if the balance of convenience suggests that

27   trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, [then]

28   dismissal is proper."  Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1449 (9th Cir.

1    1990).

2    A.    Adequate Alternative Forum

3           As an initial matter, plaintiff argues defendant waived its objection to this forum because the

4    purchase order faxed from plaintiff to defendant with each Robot-Eye sale contained a forum selection

5    clause on the back page.[12]   (See Taki Decla. ISO Opp., Exhibit 1.)   Plaintiff's argument is

6    unpersuasive.   First, Ms. Watanabe submits a declaration attesting that defendant never received or

7    reviewed the forum-selection clause because it is plaintiff's practice to only fax the front page of the

8    purchase order, which does not mention a binding forum-selection provision.  (Watanabe Declaration

9    In Support of Reply ¶ 6.)   In contrast, plaintiff presents no evidence the back page of the purchase

10   orders was sent to defendant or that defendant agreed to be bound by the forum-selection clause.

11   Second, the terms of the forum-selection clause explicitly states it governs the "contract covered by

12   this purchase order."  (See Taki Decla. ISO Opp., Exhibit 1.)  Thus, by its own language, the forum-

13   selection clause is limited to the sale of Robot-Eye units from each particular purchase order.   There

14   is no indication that the attached purchase order serves as the basis for the claims in the instant lawsuit

15   or the units sold pursuant to that order were defective.   See, e.g., Acclarent, Inc. v. Quest Medical,

16   Inc., 2006 WL 2982301, at *3 (N.D. Cal. Oct. 17, 2006) (holding that forum-selection clause did not

17   control venue analysis because the purchase order, which contained the provision, was not the basis

18   for the litigation).   Furthermore, even assuming defendant read and understood the forum-selection

19   provision, plaintiff presents no factual support that the parties intended it to govern their general

20   contractual relationships.

21          Turning to the issue of whether an adequate alternative forum exists, defendant argues Japan

22   serves as an adequate forum as evidenced in part by a lawsuit filed by defendant against plaintiff in

23   the Japanese courts seeking monetary damages and declaratory relief.  Plaintiff argues the court should

24   disregard the existence of defendant's lawsuit filed in Japan because it was filed four months after

25

26          [12]  Specifically, paragraph 14 of the back page of the October 2003 purchase order states:
     "The parties agree that the contract covered by this purchase order shall be deemed to be entered into
27   San Diego County, California, and all questions concerning the validity, interpretation, or performance
     of any of its terms and provisions or any rights of obligations of the parties hereto shall be governed
28   by and resolved in accordance with the laws of the State of California and seller specifically consents
     to venue in San Diego County, California for the resolution of any dispute arising hereunder."

1    plaintiff filed the instant case in California (i.e. April 16, 2007).  Ordinarily, an adequate alternative

2    forum exists when the defendant is amenable to service of process in the foreign forum.  Leetsch v.

3    Freedman, 260 F.3d 1100, 1103 (9th Cir. 2001).  A foreign forum is adequate when it provides

4    plaintiff with a "sufficient remedy for his wrong."  Id.  An adequate alternative forum exists even

5    when a plaintiff may not be able to proceed on a particular legal theory, or the potential damages may

6    be smaller.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241-242 (1981).

7            In this case, it is undisputed that defendant is amenable to service of process in Japan and

8    plaintiff does not argue the remedies available in the Japanese legal system are inadequate to provide

9    meaningful relief.  Plaintiff's argument that defendant's lawsuit is gamesmanship is without merit

10   because the existence of or motivation behind a foreign lawsuit has no bearing on whether the

11   alternate forum is adequate.  The focus of this factor is whether defendant is amenable to service and

12   whether there is a sufficient remedy for plaintiff's wrongs.  Defendant presents uncontroverted

13   evidence, in the form of the declaration of Ryosuke Ito, defendant's Japanese attorney, that Japanese

14   law and remedies are similar to that of the United States.  (Ito Decla. ISO Motion ¶¶ 3-6.)  According

15   to Ito's declaration, under Japanese law, plaintiff can file most of the same counterclaims against

16   defendant.  Morever, courts have consistently found Japan presents an adequate alternative forum.

17   See Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 769 n. 3 (9th Cir. 1991); Creager

18   v. Yoshimoto, 2006 WL 68055 (N.D. Cal. Mar. 14, 2006); Linkco, Inc. v. Nichimen Corp., 164 F.

19   Supp. 2d 203, 210 (D. Mass. 2001) (cataloging cases where courts have held Japan to be an acceptable

20   forum in forum non-conveniens analysis).

21   B.    Private Interest Factors

22           In analyzing whether dismissal on grounds of forum non conveniens is appropriate, courts in

23   the Ninth Circuit may consider the following "private interests": 1) the residence of the parties and

24   the witnesses; 2) the forum's convenience to the litigants; 3) ease of access to physical evidence and

25   other sources of proof; 4) availability of compulsory process for attendance of unwilling witnesses;

26   5) the cost of bringing witnesses to trial; 6) the likelihood of a fair trial; and 7) all other practical

27   problems that make trial of a case expeditious or inexpensive.  Lueck, 236 F.3d at 1143 (citation

28   omitted).

1    As to the second factor – the forum's convenience to the litigants – defendant reiterate this

2    factor weighs heavily in its favor because its employees reside in Japan and are not fluent in English

3    while plaintiff speaks Japanese.  However, as noted above, plaintiff's sole employee, Mr. Taki, has

4    submitted evidence that traveling to Japan would be a severe financial burden on his family and

5    plaintiff.  While plaintiff does not experience a language impediment if this case proceeds in Japan,

6    the relative burden between parties is not as disparate as defendant suggests.  Thus, this factor only

7    slightly favors dismissal.

8    Defendant also argues the lack of compulsory process to force Takaoka, the Japanese

9    manufacturer of Robot-Eye's controller, to appear in the U.S. litigation favors dismissal.  Plaintiff

10   does not dispute defendant's claim.  Moreover, plaintiff's fraudulent concealment claim centers

11   around the defective controller component, which Takaoka manufactured, making Takaoka a material

12   witness.  Gates Learjet, 743 F.2d at 1335-36.  On the other hand, while plaintiff has identified

13   witnesses that are relevant in presenting its case, it has not identified any specific witnesses that would

14   not be subject to compulsory process in Japan.  Thus, this factor weighs in favor of dismissal.

15   Defendant further argues the third private interest factor weighs in favor of dismissal because

16   the vast majority of documents are located in Japan.  The crucial focus of this factor is not on "the

17   quantity of evidence in each locale," but rather "the materiality and importance of the anticipated

18   [evidence and]. . . their accessibility and convenience to the forum."  Lueck, 236 F.3d at 1146 (quoting

19   Gates Learjet, 743 F.2d at 1335-36).  As noted above, both parties have identified relevant documents

20   and evidence that are located in Japan and the U.S.   It is readily apparent how Japanese documents

21   related to the parties' negotiations and the purported agreements are central and relevant to plaintiff's

22   contract claims.  Similarly, any consumer communication and purchase orders are relevant because

23   plaintiff's breach of warranty claims and intentional interference claim implicate Robot Eye's

24   functioning and defendant's communication with Nissei and Tyco.  Thus, relevant evidence exists on

25   both sides of the Pacific and there will be costs to translate, produce, and transport documents in either

26   forum.  Accordingly, this factor is neutral.  See, e.g., Ekland Marketing Co. of Cal., Inc, v. Lopez,

27   2006 WL 2827700, *6-7 (E.D. Cal. Sept. 26, 2006) (finding this factor neutral where both parties

28   identified documents and witnesses in Spain and California that were important to the litigation).

The remaining private interest factors, which both parties do not discuss in their briefs, do not favor either party. Wherever this case is litigated, there will be a corresponding cost and inconvenience to the non-native party and witnesses. Furthermore, the parties do not claim that a fair trial cannot be had or that other practical considerations make trying a case in one forum more expeditious than the other.

C.       Public Interest Factors

In addition to "private interests" factors, courts in the Ninth Circuit may consider the following "public interest" factors: 1) local interest in resolving the controversy; 2) preference for having a forum apply a law with which it is familiar; 3) burden on local courts and juries; 4) congestion in the court; and 5) the costs of resolving a dispute unrelated to this forum. Lueck, 236 F.3d at 1147 (citing Piper Aircraft Co., 454 U.S. at 259-61).

Defendant conceded at oral argument that there is a local interest in resolving this litigation. As discussed above, a forum state has an interest in remedying the harm suffered by one of its residents. See, .e.g, Gates Learjet Corp., 743 F.2d at 1336-37. Moreover, a forum state has an interest in the application and interpretation of its laws. Mintel Learning Tech., Inc. v. Beijing Kaidi Ed. & Tech. Dev. Co., Ltd., 2007 WL 2403395, at *10-11 (N.D. Cal. Aug. 20, 2007). The court will be called to apply California law with respect to plaintiff's tort claims of fraud and intentional interference. Also, California's Commercial Code will apply with respect to the breach of warranty claims. Therefore, this public interest factor weighs in favor of retention. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1182 (9th Cir. 2006) ("[W]ith this interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest.").

Morever, the remaining public interest factors do not warrant dismissal. At this stage of the proceedings, defendant has not presented any argument or evidence that Japanese law will apply to plaintiff's contract claims. As such, if the court retains this case, it will be applying familiar California law. Thus, the second public interest factor does not favor dismissal. With respect to congestion of the courts, defendant does not present any evidence as to the congestion of the Japanese courts by which the court can make an accurate analysis. Furthermore, this district has not reached the point of a litigation deluge such that a trial will be impermissibly delayed. U.S. Vestor, LLC, 290

1   F. Supp. 2d at 1069 (finding that one of the public interest factors favoring dismissal was the business

2   of the U.S. District Court for the Northern District of California). Lastly, defendant makes no showing

3   that external costs of resolving this dispute in California favor dismissal.

4   D.      Conclusion

5           It is true, as defendant argues, that in an era of international commerce, companies that deal

6   with foreign entities cannot always expect to "bring their foreign opponents into a United States forum

7   . . . ." Contact Lumber Co., 918 F.2d at 1450.  Nevertheless, defendant must still demonstrate that

8   "every reasonable consideration leads to the conclusion" that litigation should be in Japan.  Id.; see

9   Piper Aircraft Co., 454 U.S. at 255 ("[A] a plaintiff's choice of forum is entitled to greater deference

10  when the plaintiff has chosen the home forum.").  The cases cited by defendant, Contact Lumber

11  Co., 918 F.2d at 1450, Lockman Foundation, 930 F.2d at 768, Flouroware, Inc. v. Dainichi Shoji K.K.,

12  999 F. Supp. 1265 (D. Minn. 1997), are not dispositive.  In these cases the defendants were able to

13  clearly prove how both private and public factors weighed heavily in favor of dismissal.  See Contact

14  Lumber Co., 918 F.2d at 1451-52 (finding dismissal appropriate where the majority of parties were

15  from the Philippines and a number of related cases were already pending);  Flouroware, Inc., 999 F.

16  Supp. at 1272-74 (finding that because case centered around competing business in Japan, both private

17  and public factors weighed heavily in favor of dismissal).  Here, some private interest factors weigh

18  marginally in favor of dismissal but other private interest factors are neutral and the public interest

19  factors do not.  On balance, defendant has not met its burden of showing the oppressive effect of

20  keeping this litigation in California **clearly** outweighs any convenience to plaintiff.  See Contact

21  Lumber Co., 918 F.2d at 1449 ("[W]hile a U.S. citizen has no absolute right to sue in a U.S. court,

22  great deference is due plaintiffs because a showing of convenience by a party who has sued in his

23  home forum will usually outweigh the inconvenience the defendant may have shown.").

24  ///

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2         For the foregoing reasons, the court **denies** defendant's motion to dismiss for lack of personal

3    jurisdiction as to all claims and **denies** defendant's motion to dismiss for forum non-conveniens.

4         **IT IS SO ORDERED.**

5

6    **DATED:  September 26, 2007**

7

8    **HON. IRMA E. GONZALEZ, Chief Judge**
     United States District Court
     Southern District of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv578